IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PERRY DELUNA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1788 (MN) |
| | ) | |
| DELAWARE HARNESS RACING | ) | |
| COMMISSION, BRIAN MANGES, as an | ) | |
| individual and in his official capacity as | ) | |
| Presiding Judge at Harrington Raceway, | ) | |
| BEVERLY STEELE, as an individual and in | ) | |
| her official capacity as Chair of the Delaware | ) | |
| Harness Racing Commission, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM ORDER**

At Wilmington on this 9th day of October 2019:

On September 24, 2019, Plaintiff Perry Deluna ("Plaintiff" or "Deluna") sued Defendants
the Delaware Harness Racing Commission ("the Commission"), Brian Manges ("Manges"), and
Beverly Steele ("Steele") (collectively, "Defendants") for violations of the Commerce, Equal
Protection, and Due Process Clauses of the United States Constitution. (D.I. 1). Two days later,
Plaintiff filed a Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion")
with supporting opening brief. (D.I. 4, 5). On October 3, 2019, the Court held a teleconference,
heard argument from both sides, and ordered further briefing on Plaintiff's Motion. Subsequently,
Defendants filed a response to the Motion on October 4, 2019 (D.I. 15) and Plaintiff replied on
October 7, 2019 (D.I. 17). After careful review of all materials submitted by the parties, IT IS
HEREBY ORDERED that Plaintiff's Motion (D.I. 4) is DENIED.

## I.    BACKGROUND

Plaintiff is a California resident who races horses throughout the country.  He is licensed by the Commission to race horses in Delaware.  Defendants consist of the Commission, its chair (Steele), and the presiding judge (Manges) of Harrington Raceway ("Harrington"), a racetrack in Delaware.  The Motion concerns Plaintiff's June 25, 2019 purchase of a horse at Harrington in what is known as a "claiming race," his attempts to race that horse outside of the state of Delaware, and the Commission's efforts to stop and, subsequently, penalize him for doing so.

A "claiming race" is a race in which horses of similar ability are grouped together and offered for sale at a designated amount.  (D.I. 15 at 1-2).  Each horse in a particular race is offered for approximately the same price and any licensed owner may "claim" – *i.e.* purchase – any of the horses by submitting a claim in conformance with the applicable rules.[1]  (*Id.*).  The purpose of claiming races, which are apparently held throughout the country, is to ensure competitive racing, foster excitement for the local horse racing community, and strengthen the local horse racing industry. *See, e.g.*, *Jamgotchian v. Indiana Horse Racing Comm.*, 16-2344-WTL-TAB, 2017 WL 4168488, at *1 (S.D. Ind. Sep. 20, 2017); (D.I. 5 at 4; D.I. 15 at 2, 4).

Delaware, like most other horse-racing states, has rules to regulate claiming races.  These include what is colloquially known as a "claiming jail" rule – a provision that, *inter alia*, places a temporary limitation on where owners may race claimed horses.[2]  Delaware's version mandates that horses claimed in the state "shall only be eligible to enter in races in the state of Delaware for a period of 60 days following the date of the claim."   3 Del. Admin. Code § 501-6.3.3.15

---

[1]    The intricacies of such rules are not relevant to resolution of the current issue.

[2]    Delaware's rule also places a temporary restriction on who may own and race a claimed horse, but Plaintiff has not raised any issue with those portions of the rule, and they are irrelevant to the current inquiry.

("Rule 6.3.3.15"). Delaware does allow horses to be "paroled" out of claiming jail before their sentence is up but gives power over early release to the track where the horse was claimed. *Id.*; D.I. 15 at 5. Harrington has a very straightforward and simple rule – it does not grant any claiming jail waivers, without exception. (D.I. 15, Ex. 2).

On June 25, 2019, Plaintiff, via his authorized agent, claimed the horse "When You Dance" from a race at Harrington. (D.I. 5 at 2; D.I. 15 at 2-3, Ex. 2-3). Included in the purchase paperwork was information regarding the Delaware claiming jail rule as well as a notice of Harrington's no-waiver policy, the latter of which Plaintiff's agent signed in acknowledgement. (D.I. 15, Ex. 2). In accordance with that policy, When You Dance could not race outside Delaware for sixty days following Plaintiff's claim. The next Delaware race for which When You Dance was eligible, however, was not until August 19, 2019. (D.I. 15 at 6; D.I. 17 at 3). Thus, notwithstanding the Delaware rules and Harrington's policy, Plaintiff entered When You Dance in a race in Minnesota taking place on July 7, 2019. (D.I. 5 at 2-3; D.I. 15 at 3, Ex. 4). When he was informed that the horse was ineligible because of Delaware's claiming rules, he attempted to get a waiver from Harrington. (D.I. 5 at 2-3). He was, however, denied the waiver. (*Id.*). Plaintiff then proceeded to seek out jurisdictions that would not give reciprocity to Delaware's claiming jail rule. (*Id.*). He found willing partners in Illinois and Kentucky, where he raced When You Dance a total of four times between July 26 and August 18 (once in Illinois and three times in Kentucky). (D.I. 5 at 3; D.I. 15 at 3, Ex. 4).

Subsequently, the Board of Judges at Harrington notified Deluna that he was accused of violating Rule 6.3.3.15 and that a hearing would take place on August 20, 2019. (D.I. 5 at 3-4; D.I. 15 at 3). At that hearing, Plaintiff apparently did not dispute his culpability, but argued that Rule 6.3.3.15 was unconstitutional and therefore had no force. (D.I. 15 at 3). On August 21, the

Board – presided over by Defendant Manges – found Plaintiff guilty, suspended his Delaware license for 60 days, and imposed a $5,950 fine. (D.I. 5 at 3; D.I. 15 at 3, Ex. 1). Plaintiff requested a stay of the suspension from each of the Board, Steele, and the Commission. (D.I. 5 at 3-4; D.I. 15 at 3). All three denied him. (*Id.*). He appealed the Board's decision to the Commission, but his suspension and the fine were upheld.[3] (*Id.*). As a result, Plaintiff asserts that he is barred from racing horses anywhere in the country, as all other states have given reciprocity to the Delaware suspension. (D.I. 5 at 5). Plaintiff's suspension ends on October 19, 2019, and his license will be restored if he pays the fine assessed. (D.I. 17 at 4).

In late September of 2019, Plaintiff filed his complaint and Motion. He seeks injunctive relief to prevent the enforcement of Rule 6.3.3.15 not just against himself, but "against him or any other licensee of the Delaware Harness Racing Commission." (D.I. 4 at 2). In short, he seeks an injunction barring the Commission from enforcing Rule 6.3.3.15 at all.

## II.    LEGAL STANDARD

"Preliminary injunctive relief is an 'extraordinary' remedy appropriate only in 'limited circumstances.'" *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). "It may be granted only when the moving party shows (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (citations and modifications omitted); *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Movants face a "heavy burden," *Lane v. New Jersey*,

---

[3]      Plaintiff's appeal was heard by the Commission on September 10, 2019. (D.I. 15 at 3).

753 Fed. App'x. 129, 131 (3d. Cir. 2018), and must establish entitlement to relief by "clear evidence," *Boyertown*, 897 F.3d at 526; *see also Winter*, 555 U.S. at 22; *Lane*, 753 Fed. App'x. at 131 (finding movant "did not meet his heavy burden of showing the District Court that a preliminary injunction was warranted." (citing *Kos Pharm.*, 369 F.3d at 708; *Holland v. Rosen*, 895 F.3d 272, 285 (3d Cir. 2018))). Failure to establish any of the elements, especially either of the first two, renders preliminary injunctive relief "inappropriate." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt, LLC*, 793 F.3d 313, 319 (quoting *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)); *see also Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1356 (Fed. Cir. 2002) ("[A] trial court may . . . deny a motion based on a patentee's failure to show any one of the four factors – especially either of the first two – without analyzing the others."). A temporary restraining order ("TRO") is subject to the same standard. *E.g., Intercept Pharms., Inc. v. Fiorucci*, No. 14-1313-RGA, 2016 WL 6609201, at *1 (D. Del. Jan. 28, 2016); *Takeda Pharms. USA, Inc. v. West-Ward Pharm. Corp.*, No. 14-1268-SLR, 2014 WL 5088690, at *1 (D. Del. Oct. 9, 2014); *In Re Cyclobenzaprine*, No. 09-2118-SLR, 2011 WL 1980610, at *1 (D. Del. May 20, 2011).

## III.  DISCUSSION

The Court finds that Plaintiff is not entitled to the extraordinary remedy of injunctive relief because he has failed to make a clear showing of irreparable harm.

### A.  Plaintiff Has Not Shown Irreparable Harm

To obtain a preliminary injunction, a plaintiff must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (2008); *see also Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017). As a general matter, "a purely economic injury, compensable in money, cannot satisfy [this] requirement." *Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011) (citations omitted). Rather, the injury must be of

such a "peculiar nature . . . that compensation in money alone cannot atone for it." *Acierno v. New Castle* County, 40 F.3d 645, 653 (3d Cir. 1994) (citations omitted); *see also, id.* (noting "irreparable" in this context "connotes that which cannot be retrieved, put down again, or atoned for"). Although exceptions exist to the general rule against pure economic injury, the potential economic loss must be so great that it threatens to cause an injury that cannot be righted with money alone. *See, e.g.*, *Doran v. Salem Inn*, 422 U.S. 922, 932 (1975) (finding irreparable harm shown where movant's business "would suffer a substantial loss of business and perhaps even bankruptcy" absent injunctive relief); *Minard*, 670 F.3d at 255 (noting the economic injury exception only applies where "the potential economic loss is so great as to threaten the existence of the movant's business").

Additionally, Plaintiff must present evidence of the injuries suffered or impending – argument paired with conclusory allegations alone is insufficient. *See, e.g.*, *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d. Cir. 1992) (holding movant's application for injunctive relief insufficient where it failed to submit evidence demonstrating irreparable harm); *Boyer v. Taylor*, No. 06-694-GMS, 2012 WL 1132786, at *3 (D. Del. March 30, 2013) ("The plaintiffs allege in a conclusory manner that the failure to issue injunctive relief could result in death or severe illness. The plaintiffs provide argument, but no evidence, in support. Nor is there indication that, at the present time, they are in danger of suffering irreparable harm. [Thus, t]he plaintiffs fail to meet the requisites for injunctive relief."); *Healthpoint Ltd. v. Stratus Pharms.*, 273 F. Supp. 2d 769, 815 (W.D. Tex. June 2, 2001) ("Assertions of injuries not supported by evidence fail to establish clearly irreparable harm." (*citing Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir.1985))); *see also In Re Revel AC*, 802 F.3d 558, 572 (3d Cir. 2015) (noting, in the

bankruptcy context, "the adequacy of the proof provided plays an important role in evaluating the harm that will occur depending on whether or not a stay is granted") (citations omitted).

Here, Plaintiff argues that he has suffered or will suffer irreparable harm because he "is currently suspended and cannot race any of his horses anywhere . . . costing [him] tens of thousands of dollars in racing opportunities and [forcing] him to dispose of some of his horses." (D.I. 5 at 7). He also intimates that he is suffering reputational damage from the suspension, asserting "[w]hen a horse owner is suspended the public assumes he has done something wrong." (D.I. 17 at 4). Finally, he alleges that as a result of the preceding issues, he has endured and continues to endure irreparable damage to his business. (D.I. 5 at 7). Defendants disagree that any of the harms Plaintiff has alleged are irreparable. Specifically, they counter that "potential harm to reputation is usually insufficient to support a conclusion that irreparable harm exists" and "[t]emporary loss of income does not usually constitute irreparable injury." (D.I. 15 at 6-7).

Based on the filings, the Court finds that Plaintiff has not shown that he is likely to suffer immediate irreparable harm absent an injunction.[4] Plaintiff argues that he will suffer harm based on attorney argument and conclusory assertions but has not submitted any evidence of his supposed injuries or support for his assertions. He has not, for example, offered a declaration regarding his business issues or reputational concerns, or bills of sale reflecting the disposal of his horses. As the movant, the burden is Plaintiff's to provide "clear evidence" that he is entitled to

---

[4]     It is unclear to the Court that the injuries asserted, including business losses, for the limited time of the suspension could not be addressed later with money damages should Plaintiff ultimately prevail on his claims. Similarly, Plaintiff's arguments that the suspension will continue unless he pays the fine do not alter the result. Again – should Plaintiff prevail, presumably that payment, if paid to lift the suspension, could be recouped. *See, e.g.*, *Minard Run Oil*, 670 F.3d at 255 (stating purely economic injuries are not irreparable); *Acierno*, 40 F.3d at 653 (holding an irreparable injury is one of such a "peculiar nature . . . that compensation in money alone cannot atone for it").

the relief requested.  *See Winter*, 555 U.S. at 22; *Boyertown Area Sch. Dist.*, 897 F.3d at 526.

Although some of the injuries he has alleged may in fact rise to the level of irreparable harm,

arguments paired with conclusory allegations but without evidence are insufficient to justify

granting this "extraordinary" remedy.  *E.g., Campbell Soup Co.*, 977 F.2d at 92; *Boyer*, 2012 WL

1132786, at *3; *Healthpoint Ltd.*, 273 F. Supp. 2d at 815.

**B.**     **The Remaining Factors**

Because Plaintiff has failed to establish that he would suffer irreparable harm without

injunctive relief, the Court need not reach the remaining factors.[5]  *See, e.g.*, *Bennington Foods*

*LLC. v. St. Croix Renaissance, Grp.*, 528 F.3d 176, 179 (3d Cir. 2008) ("As we find that . . . there

is no possibility of irreparable harm on the record before us, there is no need to analyze the other

prongs of the test.").  The absence of irreparable harm is alone a sufficient basis to deny Plaintiff's

request for a TRO and preliminary injunction.  *See, e.g.*, *Ferring Pharms., Inc. v. Watson Pharms.,*

*Inc.*, 765 F.3d 205, 219 (3d Cir. 2014) ("Absent a showing of irreparable harm, a plaintiff is not

entitled to injunctive relief, even if the other three elements are found (*citing NutraSweet*, 176 F.3d

at 153)); *ASI Bus. Sols, Inc. v. Otsuka Am Pharm., Inc.*, 233 F. Supp. 3d 432, 440 (E.D. Pa. Feb.

10, 2017) ("Regardless, the Court need not consider [the issue of likelihood of success on the

---

[5]     Whether Plaintiff is ultimately likely to succeed on the merits may be a closer question than Defendants acknowledge, but Plaintiff has failed to meet his burden to establish likelihood of success on the current record.  Plaintiff provides no evidence and little briefing on the complex, weighty Constitutional issues he raises and even acknowledges that "there is a split of authority regarding whether the concept of claiming jail rules is [c]onstitutional." (D.I. 5 at 7 (comparing *Jamgotchian v. Kentucky Horse Racing* Comm, 488 S.W. 3d 594 (Ky. 2016), *cert denied*, 137 S.Ct. 493 (2016) (upholding Kentucky's claiming jail rule), with *Jamgotchian v. Indiana Horse Racing Comm.*, 16-2344-WTL-TAB, 2017 WL 4168488 (S.D. Ind. Sep. 20, 2017) (striking down Indiana's claiming jail rule)).  Additionally, Plaintiff does not mention, let alone discuss, the case in our Circuit that addresses this topic, *Jamgotchian v. State Horse Racing Comm'n*, 269 F. Supp. 3d 604 (M.D. Pa. Aug. 29, 2017).  At this stage, therefore, the Court cannot agree that Plaintiff is likely to succeed on the merits.

merits] at this time, because the Court finds that [movant] has failed to clearly demonstrate irreparable injury, and this alone precludes the issuance of a preliminary injunction."); *see also Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.,* No. 15-819-LPS-CJB, 2016 WL 4770244, at *7 (D. Del. Aug. 12, 2016) ("In light of the Court's conclusion below that Plaintiffs have not sufficiently demonstrated that irreparable harm will befall them in absence of the requested relief, no injunction could issue. And so, an assessment of Plaintiffs' likelihood of success on the merits is not required for purposes of resolving the Motion."); *Chestnut Hill Sound Inc. v. Apple Inc.,* No. 15-261-RGA, 2015 WL 6870037, at *2 (D. Del. Nov. 6, 2015) ("Because I find, however, that [the movant] has not shown that it will suffer irreparable harm if a preliminary injunction is not granted, an assessment of [the movant's] likelihood of success on the merits is not necessary to the adjudication of [its] motion.").

For the foregoing reasons, the Court will deny Plaintiff's motion for a Temporary Restraining Order and Preliminary Injunction.

The Honorable Maryellen Noreika
United States District Judge